IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE, . . . . . . . DECEMBER TERM, 1878.

## M. J. LUCAS v. C. M. MOORE et als.

1. CHANCERY PRACTICE. *Resale of Lands. Exceptions.* Upon a resale of land ordered by the Chancery Court under the lien reserved for the purchase money, it is no ground of exception to the sale that the land was not divided and sold in lots, the decree not directing it, and the owner of the land not offering any plan of division, or requesting a sale in lots.

2. SAME. *Same. Errors and irregularities.* Errors and irregularities in the proceedings previous to the original sale are no ground of exception to the latter sale.

3. SAME. *Same. Action of ejectment against purchaser at first sale not valid objection to resale.* A dispute as to the title arising subsequent to the first sale, and the pendency of an action of ejectment against the purchaser, is no objection to the resale in enforcement of the lien retained.

4. SAME. *Offer to open biddings not to be rejected for form.* An offer to open biddings made in good faith, should not be rejected upon the mere

1—VOL. 2.

form of the application. But application based upon conditions that could not be complied with, should not be entertained.

---

FROM SUMNER.

---

Appeal from the Chancery Court at Gallatin. H. H. LURTON, Ch.

J. J. TURNER, for complainant.

WILSON & VERTREES, for defendants.

McFARLAND, J., delivered the opinion of the court.

On the 12th of October, 1870, a decree was made in the cause of *Trabue, Davis & Co.* v. *J. F. Gaines et als.*, and *W. G. Wade* v. *W. T. Anthony et als.* (which causes had been consolidated) in the Chancery Court at Gallatin, for the sale of a lot in said town. The sale was made on the 1st of December, 1870, M. J. Lucas becoming the purchaser, and was confirmed by a decree on the 26th of April, 1871. Lucas failing to pay his notes for the deferred payments, judgments were taken and the property resold on the 15th of August, 1874, without the equity of redemption, and purchased by L. A. Green for $2,600, $2,255.70 cash; and the balance on time. This sale was reported and confirmed by the Chancellor over various exceptions filed by Lucas. His application to reopen the biddings was also refused. Lucas and J. J. Turner, who joined in the application to open the biddings, prayed an appeal. Lucas, however, only gave bond.

The first exception to the confirmation of the sale

is, that the lot was susceptible of division, and would have realized more by selling in two different lots.

The decree directed the Master to sell the lot, or a sufficiency to pay the debt, etc. No division was directed by the decree. It is not alleged that the owner offered the Master any plan for a division, or requested a sale in two lots; and the sale, as a whole, being in pursuance of the decree, the exception was not well taken. Code, 2154. We so held in an unreported case as to a sheriff's sale. Besides, this is a question that could not properly be made by exception.

The second exception is simply that the appellant, Lucas, has lost largely by the resale, having made valuable improvements on the lot. This is, of course, his misfortune, but without more, is no ground to set aside the sale.

The third, fourth, and fifth exceptions relate to the validity of the sale under which he (Lucas) purchased the land. That is to say, the sale was ordered to pay the debts of J. G. Anthony, deceased, and the report of the Master, upon which the decree was founded, did not show a state of facts authorizing a sale.

Questions of this character cannot properly be made in this mode. The sale to Lucas was regularly confirmed. The present resale is simply a mode adopted by the court to enforce its own decrees and collect the purchase money; and until the decree confirming the decree to Lucas be in some regular manner set aside, he cannot be permitted to resist the payment of

the purchase money; and the decree of sale in the first instance, and the decree confirming the sale cannot be reviewed upon exceptions to the last report of sale. The court cannot, upon such exceptions, review and reverse the former decrees. Besides, we may venture the intimation that the sale was not void for the reason stated. The decree was, by consent of parties and the bill of Wade, one of the complainants, made a case for sale of the property, independent of the facts reported by the Master.

The sixth exception was, that the original sale was without the right of redemption, when the bill had not so prayed. This was, at most, an error, but after confirmation and the expiration of the time of redemption, it is no ground upon which the purchaser can, in this mode, have the sale declared void.

The same answer applies to the seventh exception. The eighth, ninth, and tenth exceptions show that since he (Lucas) purchased the property an action of ejectment had been brought against him for part of the property, which is still pending.

It is assumed, first, that if this action be successfully prosecuted, the damages he would thereby sustain ought to be deducted from the amount due from him. And at any rate, the question of title raised by this action ought to be disposed of before a resale of the property, as the pendency of the action prevented the property from selling for its value.

Upon the first point, if Lucas is entitled to any relief, it would be by bill, or some original proceeding showing eviction, or the existence of an outstand-

ing superior title, and that his purchase was under such circumstances as to entitle him to relief. But certainly these questions do not arise upon an exception of this character.

Upon the second point, while in general, a court ordering a sale at the instance of the parties, ought to remove all clouds upon the title so as to insure a fair price, when the pleadings of parties enable the court to do so; yet in a case of this character, where the property has been sold, and the purchaser fails to make payment, the mere suggestion of an adverse claim to the property will not suspend all further action, and prevent the parties in interest from enforcing the lien retained by a resale of the property.

The principle settled in *Hurley* v. *Coleman*, 3 Head., 265, is directly applicable.

The eleventh exception is irrelevant, and the twelfth only reiterates the former grounds.

The last exception is, that the sale should not have been made for cash without fixing the amount for which the sale was to be made. The decree does fix the amount, and it has been repeatedly held that such sale may be for cash.

At the same time said Lucas presented to the court a bill which he asked leave to file as "an original bill in the nature of a bill of review." This bill sets forth all the grounds of objection to the proceedings stated in the exceptions, and, in addition, Lewis Anthony, the minor child and heir of J. G. Anthony, who had owned the lot, was not before the court when the sale was ordered. It prays that the pro-

ceedings and sale be declared void, and that his purchase money be restored to him; or if this cannot be done, 'that the action of ejectment that had been brought against him for part of the lot be settled, and after this the lot, if necessary, be sold, but that the present sale be set aside or superseded.

The Chancellor permitted this bill to be filed, but refused to suspend the confirmation of the sale to Green. And, so far as we see, it is pending in the court below. No injunction was, in terms, prayed for.

This bill not being before us, upon its sufficiency, we can express no definite opinion in regard to it. If the Chancellor erred in refusing to stay proceedings in the original case upon the presentation of this bill, it is an error we cannot correct. We have no power to review the action of an inferior Judge or court in refusing an injunction or order of an equivalent nature. In regard to the material point in the bill as to whether the minor was before the court when the decree was rendered, it appears that he was a non-resident. The decree recites that there was due publication, and thereupon a solicitor of the court was appointed guardian *ad litem*, who answered and set up all defects. There also appears an order of publication in sufficient form, except in giving the style of the case; it is stated as one case in which the complainants in both bills are stated as the complainants in one case. Objections of this character, coming not from the minor, but the purchaser, would probably not be entitled to a very favorable consideration. But as to this bill we decide nothing, further than that it presents

no general issue upon which we can now reverse the action of the Chancellor.

Finally, when all the objections were overruled, Lucas presented his petition to open the biddings, in which he sets forth the facts already stated, especially in regard to his improvements on the lot, etc., and offered an advance bid by J. J. Turner.

To this petition J. J. Turner appends the following: After stating that the property is worth $4,000, etc., "if the court will open the biddings and settle the title of said property, I hereby guarantee an advance of ten per cent. on the sale now reported, and will secure the same by good security, or such deposits as will amply secure the bid to the satisfaction of the court or Clerk and Master."

This application was refused because, as stated, the money was not paid into court.

Application to open biddings, made in good faith, should be favorably received and liberally acted upon, the object always being to realize the best price out of the property; at least this rule should be so far acted upon as not to repel the applicant upon the mere .form of his application. But the court should give such direction as will enable the party to conform to its practice and secure the right.

But we understand the proposition of Col. Turner to be, that if the court will open the biddings *and settle the title*, that he will advance ten per cent.

"Settle the title," in view of this record, we would understand to mean to settle the questions made in regard to the validity of the sale in the first instance,

and the conflicting right set up by the action of eject-ment; and it is upon these conditions alone, as we un-derstand, that he proposed to advance ten per cent. on the previous bid; and without this he did not under-take to advance the bid at all.

We think it clear that such a proposition should not have been entertained, and the application was prop-erly refused, although the correct reason was not given.

This seems to be a case of hardship, but courts must enforce their judgments and decrees; and the ap-pellant's misfortune, as we suppose, has resulted from his making a purchase when he was not able to meet the payments.

The decree must be affirmed.